**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Sara N., | ) | |
| | ) | |
|    *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 20 CV 50006 |
| | ) | Magistrate Judge Lisa A. Jensen |
| Andrew Marshall Saul, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|    *Defendant*. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

      This case must be remanded for further analysis because the ALJ's decision does not provide a sufficient explanation for this Court to be able to follow the path of his reasoning and to ensure that substantial evidence supports his decision.

      Only a brief background summary is needed to understand the issues discussed below. An administrative hearing was held on July 9, 2019. Plaintiff testified about her life and medical conditions. She was then 42 years old, married with two daughters aged 15 and 12. She suffered from both physical and mental impairments, including back, knee, and shoulder problems, migraine headaches caused by jaw problems, depression, anxiety, and obsessive compulsive disorder ("OCD"). The OCD symptoms were a focal point of the hearing. Plaintiff testified that she was preoccupied with the safety of her children and engaged in compulsive and ritualistic behaviors to protect them. Based on her reading of the bible, she believed that the number six was demonic and thus tried to avoid reminders of it in her daily life. She would, for example, count her steps and take an extra step if she ended her journey on the number six or a multiple thereof. She would avoid making a purchase if the items added up to six dollars. She also

1

suffered from paranoia and would take alternate routes home when her children were in the car because she feared someone was following them.

The ALJ found that Plaintiff was not disabled because she had the residual functional capacity ("RFC") to do light work subject to multiple physical and mental limitations, a key one being that she would only do simple and routine tasks. The ALJ found that State Agency opinions were persuasive, although the ALJ did not rely on them in any discernible way. The ALJ found that an opinion from Dr. Saba Syed, Plaintiff's treating psychiatrist for just over a year, was unpersuasive.

Plaintiff raises multiple arguments for a remand, some more narrowly targeted than others. The Court will not address most of them. Instead the Court will begin with and focus mostly on Plaintiff's argument that the ALJ failed to provide an adequate explanation for rejecting Dr. Syed's opinion. This opinion, if credited, would support a finding that Plaintiff was disabled. Because Dr. Syed only assessed Plaintiff's mental impairments, that will also be the chief topic in this Opinion, but it should not be forgotten that Plaintiff's case rests on the cumulative effect of the physical and mental impairments.

In their briefs, the parties spend considerable time discussing the revised rules regarding the assessment of medical opinions, including changes to the treating physician rule, which are all now applicable to this case because Plaintiff's claim was filed after March 27, 2017. The Commissioner provided an 8-page waterfront summary of all the changes. Although the Court appreciates the overview, most of these changes have no bearing on the current arguments. It is enough to note that both sides agree that the ALJ is not required to give Dr. Syed's opinion controlling weight based simply on her status as a treating physician and that the two key factors are supportability and consistency. *See* Dkt. 25 at 14 (the Commissioner agrees that the ALJ

"must" analyze the supportability and consistency factors but argues that he was not required to discuss the remaining checklist factors).

With this general framework in mind, the Court turns to the ALJ's analysis of Dr. Syed's opinion. The only explicit analysis was the following paragraph:

> The undersigned finds the February 2018 mental assessment provided by Saba Syed, MD (20F, B25F), unpersuasive, because [she] assesses extreme mental limitations such as inability to meet competitive standards for even unskilled work such as remembering work-like procedures, dealing with normal work stress, and off task limitations of more than four days a month. Such is inconsistent with mental status findings within normal limits and even the claimant's own testimony with respect to her level of mental functioning.

R. 30. To recap, the first sentence sets forth a broad-brush conclusion, which is that Dr. Syed found Plaintiff's limitations to be "extreme." The second sentence then offers two reasons for rejecting Dr. Syed's opinion—namely, that it was inconsistent with normal mental status findings and was inconsistent with Plaintiff's own testimony.

This explanation is conclusory and vague. For starters, the introductory premise is overly reductionist. The ALJ did not fully or fairly summarize Dr. Syed's opinion. The form Dr. Syed completed is 7 pages and contains both open-ended and checkbox questions. Question #6, which is the one the ALJ cited three examples from, asked Dr. Syed to rate Plaintiff's mental skills in 16 categories by choosing one of five possible ratings. *See* R. 1025. The most extreme rating was "No useful ability to function." Dr. Syed did not check this rating for *any* of the 16 skills. The next category down was "Unable to meet competitive standards." Dr. Syed checked this box for 7 of the 16 skills. But for the remaining 9 skills, Dr. Syed rated Plaintiff's abilities as falling in the first three (milder) categories. Also, in response to question #14, Dr. Syed rated Plaintiff as having "None-Mild" limitations (the lowest possible category) in her activities of daily living. Contrary to the ALJ's suggestion, Dr. Syed did not unthinkingly or uniformly check the most

3

extreme category across the board. Instead, her assessments were more varied and nuanced than the ALJ suggested. In effect, the ALJ created a strawman opinion.

This leads naturally into the first rationale which rests on a comparison between the supposedly extreme findings made by Dr. Syed and the normal findings supposedly shown by the medical record. The ALJ's assertion that Plaintiff's "mental status findings [were] within normal limits" was an unqualified statement. The ALJ did not include any caveats (*e.g.* that the findings were *mostly* normal), nor did the ALJ acknowledge any contrary evidence. The impression is that *all* the findings were normal. But this characterization is another strawman.

As Plaintiff notes, the record contains a mixed picture with some normal findings interspersed with other abnormal findings. Plaintiff believes that this balance tilts more toward the abnormal side, arguing that her medical providers "repeatedly set forth abnormal findings." *See* Dkt. 16 at 10 (providing numerous record citations). Logically, the presence of some abnormal findings should not be surprising given that both the ALJ and the State agency physicians agreed that Plaintiff had several documented psychiatric impairments (including OCD) and that these impairments caused moderate limitations in several areas, including concentration, persistence, and pace.

The Commissioner does not address the specific record citations provided by Plaintiff. Instead, the Commissioner states, in conclusory fashion, that the ALJ "reasonably characterized mental status findings as within normal limits, as he discussed the record evidence of her mental health treatment in detail." Dkt. 25 at 18. The detailed discussion being referred to is the ALJ's earlier narrative summary of Plaintiff's mental health treatment from November 2016 through January 2019, as well as the ALJ's summary of a November 2015 evaluation from Peter Thomas, a consulting psychologist. The Commissioner believes that, in this earlier discussion,

one can find further insight into the ALJ's reasoning and can also find evidence that the ALJ addressed the contrary abnormal findings. It is certainly true that courts are advised to read ALJ opinions holistically without rigidly requiring that all the evidence be discussed repeatedly in every analytical section. *See Buckhanon v. Astrue*, 368 Fed. App'x. 674, 678 (7th Cir. 2010) (stating that there is no "tidy packaging" requirement).

But the problem with relying on this earlier summary to extract clues about the ALJ's thinking is, first of all, that it requires a certain amount of speculation. In many places, it is unclear why the ALJ was (apparently) giving more weight to certain normal findings over other abnormal ones. Yes, we can make educated guesses about what the ALJ was implying, but they are still guesses in the end. In addition, the ALJ's implicit conclusions arguably rely on improper doctor playing, especially given that no medical expert testified at the hearing.

The best way to illustrate these two concerns is to quote some of the ALJ's statements. They follow a familiar see-saw pattern in which abnormal findings are acknowledged in the first half of the sentence, but are then implicitly dismissed by the normal findings in the second half of the sentence. It's as if there were an all-or-nothing sports contest between two abstract categories called "normal" and "abnormal" and all that matters is that the "normal" team came out slightly ahead in the end. Here are some examples, with italics added to heighten the contrast:

- "[Plaintiff] cried and appeared agitated throughout the interview [with Dr. Thomas], *otherwise her mental status examination was within normal limits*."
- "*Aside from* anxious mood and affect, insight documented as unrealistic regarding degree of illness, *her mental status examination was normal*[.]"
- "*While* she continued to have symptoms consistent with her diagnoses, *also documented were* strengths such as good verbal skills, insightfulness, attentiveness, intelligent, responsible, outgoing, friendly and gets along well with others[.]"
- "In July 2018, she was noted to have thoughts of [injuring] her back, being overtaken by demon(s) and contamination, and of hurting herself or her family (B31F/21). Her mood was noted as depressed and anxious, and insight impaired *but improving*."

5

R. 28-29. What is missing is a medical analysis confirming that the normal findings being cited were medically more significant than the contrary findings. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ALJs should not "play doctor" by summarizing the results of a medical exam without input from an expert). Among other things, the ALJ noted that Plaintiff was "appropriately groomed and dressed"; that "her memory and fund of knowledge [were] intact," and that she "acknowledge[d] that her fears such as stopping on certain numbers and the fear that she will hurt her children were unrealistic." R. 29. But if the ALJ did believe these findings were significant (and this is speculative because the ALJ provided no explicit analysis), then questions still arise as to whether the ALJ's intuitions were medically grounded. For example, is appropriate grooming a key indicator? Perhaps, but we know that both Dr. Thomas and Dr. Syed were aware of this point but still diagnosed Plaintiff with these impairments. The ALJ's observation that Plaintiff at one point admitted that her thoughts and behaviors were irrational is another fact that needs medical grounding. *See* American Psychiatric Association, What Is Obsessive-Compulsive Disorder?, https://www.psychiatry.org/patients-families/ocd/what-is-obsessive-compulsive-disorder (last visited Jan. 11, 2021) ("Even if they know their obsessions are not realistic, people with OCD have difficulty disengaging from the obsessive thoughts or stopping the compulsive actions."). In general, the ALJ provided very little *analysis* about the OCD symptoms, even though they were a big part of Plaintiff's case. Likewise, the Commissioner's 27-page brief barely mentions this evidence. Maybe good reasons exist why these symptoms would not prevent Plaintiff from working, but the current decision does not reveal them.

Turning to the second rationale, the ALJ claimed that Dr. Syed's opinion was inconsistent with Plaintiff's testimony. This statement is also vague. The ALJ did not describe, in

6

this part of the decision, what the alleged inconsistencies were. As a result, this Court and counsel are again forced to look back through the decision for an explanation. The Court's best guess is that the ALJ was referring to the earlier credibility analysis where the ALJ claimed that Plaintiff testified inconsistently in two instances. Here is the ALJ's explanation:

> Although [Plaintiff] testified to no longer going to church due to self-consciousness, recent mental health treatment notes reflect her attendance and "shar[ing]" in church. While she testified to unpredictable panic attacks requiring her to isolate from others for approximately 30 minutes, her mental health treatment record reflects panic related to her back "tweak[ing]" in the shower (B31F/5)[.]

R. 29.

These two inconsistencies are minor at best, and they do not directly undermine the key assertions made by Dr. Syed. As a preliminary point, the "treatment notes" the ALJ relied on were *not* Dr. Syed's notes. As for the assertions, even if it were true that Plaintiff went to church more than she claimed and even if her panic attacks only occurred in the shower, it is not clear why these facts would undermine Dr. Syed's opinion. Dr. Syed did not discuss these two activities, and although there was one question asked about panic attacks, Dr. Syed did not appear to base her overall findings heavily on this one symptom.

Moreover, the evidentiary basis for both points is tenuous. The ALJ cited to a single treatment note indicating that Plaintiff went to church one time six months before the hearing. *See* R. 1134. This is weak evidence to contradict Plaintiff's testimony that she was no longer going to church. Also, the ALJ's assertion that Plaintiff was "sharing" while at church seems to be a misreading of the note, which states that the "sharing" was the discussion between Plaintiff and the therapist. The ALJ did not cite to any other evidence to suggest that Plaintiff was regularly attending church. As for the location of the panic attacks, the ALJ cited to the following statement in a treatment note: "[Plaintiff] stated that her back 'tweaked' in the shower

7

sending her into a panic." R. 1130. The ALJ construed this as a representation by Plaintiff that she had panic attacks *only* in the shower and nowhere else and argued that it was inconsistent with her hearing testimony that she had panic attacks in other places, such as while she was washing dishes. But the ALJ's interpretation is strained and unfair. The statement merely indicates that Plaintiff reported that she once had a panic attack in the shower.

Putting these two rationales aside, the larger concern is that the ALJ never directly addressed the key issues of consistency and supportability. Plaintiff argues that Dr. Syed's opinion was consistent with the consultative report from Dr. Thomas. He diagnosed Plaintiff with major depressive disorder and anxiety disorder, and he noted that Plaintiff "often cried and appeared extremely agitated throughout the interview" and that her "anxiety appears to consume other aspects of her life including fear for the safety of her children." R. 451. These observations are broadly consistent with Dr. Syed's assessment. Both doctors also made similar observations about other issues, such as Plaintiff's hygiene. *See* R. 450 (Dr. Thomas: "hygiene and grooming were adequate and appropriate for the situation"); R. 1026 (Dr. Syed: rating Plaintiff as "Unlimited or Very Good" in the category of "Adhere to basic standards of neatness and cleanliness"). It is true that Dr. Thomas found that Plaintiff was able to pass the serial sevens test and other tests assessing memory and intellectual functioning. One could perhaps argue that these findings are in tension with Dr. Syed's report, but even this point is not clear. As the Seventh Circuit has often noted, including very recently, these brief office tests do not necessarily address potential problems with sustained concentration. *See Lothridge v. Saul*, __ F.3d __, 2021 WL 37503, *5 (7th Cir. Jan. 5, 2021) ("Whether Lothridge is congenial or able to add sums in a short-term encounter or examination has little or no apparent bearing on whether she can maintain pace or stay on task for an entire workday.").

8

One small final point on the topic of consistency. The Commissioner, early in its brief, emphasized that consistency and supportability were key factors and "must" be explicitly analyzed by the ALJ. Dkt. 25 at 14. However, later in its brief, when responding to Plaintiff's argument about Dr. Thomas's opinion, the Commissioner said only this: "Although Plaintiff believes that Dr. Thomas's report supports her claim, she has provided no authority that would require an ALJ to discuss the alleged consistency of Dr. Syed's opinion with other evidence in the record." Dkt. 25 at 18. This statement is puzzling and raises questions about the Commissioner's own consistency.

The Court finds that the above concerns about the handling of Dr. Syed's opinion are enough for a remand. Plaintiff has raised other arguments. She argues that the ALJ did not adequately consider her headaches, both how frequent they were and that she would often have to rest for two to three hours after having one; the ALJ failed to include a limitation on one-to-two step tasks in the hypothetical question posed to the vocational expert; and the Appeals Council erred in not considering newly submitted evidence. Because these arguments may be altered or even mooted on remand, the Court finds that it would not be a wise use of judicial resources to consider them further here. But to be clear, the Court is not indicating that they lack merit. On remand, Plaintiff's counsel should explicitly raise these arguments with the ALJ to ensure that they are adequately addressed. Failure to do so may result in a finding of waiver if this case is appealed a second time.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and this case is reversed and remanded for further consideration.

Date: January 11, 2021          By: _____
Lisa A. Jensen
United States Magistrate Judge